### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FEDERAL TRADE COMMISSION and PEOPLE OF
THE STATE OF ILLINOIS,

      Plaintiffs,

      v.

NORTH AMERICAN AUTOMOTIVE SERVICES,
INC., also d/b/a Ed Napleton Automotive Group, a
corporation,

ED NAPLETON ELMHURST IMPORTS, INC., a
corporation, also d/b/a Napleton's Kia of Elmhurst/Ed
Napleton Acura,

NAPLETON'S ARLINGTON HEIGHTS MOTORS,
INC., a corporation, also d/b/a Napleton's Arlington
Heights Chrysler Dodge Jeep Ram,

NAPLETON'S NORTH PALM AUTO PARK, INC., a
corporation, also d/b/a Napleton's Northlake Chrysler
Dodge Jeep Ram,

NAPLETON ENTERPRISES, LLC, a limited liability
company, also d/b/a Napleton's South
Orlando/Kissimmee Chrysler Dodge Jeep Ram,

CLERMONT MOTORS, LLC, a limited liability
company, also d/b/a Napleton's Clermont Chrysler
Dodge Jeep Ram,

NORTH PALM MOTORS, LLC, a limited liability
company, also d/b/a Napleton's Northlake Kia,

NAPLETON'S ELLWOOD MOTORS, INC., a
corporation, also d/b/a Napleton's Ellwood Chrysler
Dodge Jeep Ram,

NAPLETON MID RIVERS IMPORTS, INC., a
corporation, also d/b/a Napleton's Mid Rivers Kia, and

**Case No. _____**

**COMPLAINT FOR
PERMANENT
INJUNCTION,
MONETARY RELIEF,
AND OTHER RELIEF**

1

HITKO KADRIC,

    Defendants.

Plaintiffs, the Federal Trade Commission ("FTC"), and the People of the State of Illinois, by KWAME RAOUL, Illinois Attorney General, for their Complaint allege:

1.    The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), 57b, and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, which authorize the FTC to seek, and the Court to order, permanent injunctive relief, monetary relief, and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the TILA and its implementing Regulation Z, 12 C.F.R. § 226, and the ECOA and its implementing Regulation B, 12 C.F.R. § 202. Defendants' violations are in connection with the advertising, marketing, promotion, offering for sale, lease, or financing, or sale, lease or financing of vehicles.

2.    The People of the State of Illinois, as part of the same case or controversy, also bring this action pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, ("Consumer Fraud Act") and the Illinois Motor Vehicle Advertising Regulations, 14 Ill. Adm. Code 475.110 *et seq.*, to obtain restitution, injunctive and other equitable relief and penalties.

## SUMMARY OF CASE

3.      In the course of promoting, advertising, marketing, selling, leasing, or financing vehicles, in addition to charging consumers for the vehicles themselves, Defendants charge consumers for additional products and services ("add-on" or "add-on products"), such as service contracts, GAP insurance, or paint protection.  Add-on charges can range from a hundred dollars to well over a thousand dollars, substantially increasing the cost of a vehicle—and auto dealerships' profits on a sale.  In many instances, Defendants tack on charges for add-ons in consumers' contracts without their informed consent.  In other instances, Defendants mention add-ons, but falsely tell consumers they are mandatory.  Further, Corporate Defendants have a discretionary policy that permits its employees to mark up interest rates and tack on charges for add-on products, resulting in higher costs to Black applicants than similarly-situated non-Latino White applicants.  Defendant Napleton's Arlington Heights CDJR and Hitko Kadric have violated the Illinois Consumer Fraud Act and Illinois Motor Vehicle Advertising Regulations by placing prohibited coupon offers in their advertising material and have violated these statutes and the TILA by failing to provide disclosures where required.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.  Subject matter jurisdiction is conferred upon this Court with respect to the supplemental state law claims of the State of Illinois by 28 U.S.C. § 1367.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

**PLAINTIFFS**

6.      The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the ECOA, 15 U.S.C. §§ 1691-1691f, which, *inter alia*, prohibits discrimination on the basis of race or color, and the TILA, 15 U.S.C. §§ 1601-1666j, which establishes, *inter alia*, certain disclosure requirements for advertisements promoting closed-end credit transactions.

7.      The Attorney General of the State of Illinois, Kwame Raoul, is charged, *inter alia*, with the enforcement of the Consumer Fraud Act and the Illinois Motor Vehicle Advertising Regulations promulgated thereunder (815 ILCS 505/7, 815 ILCS 505/4).

8.      The Illinois Attorney General believes this action to be in the public interest of the citizens of the State of Illinois and brings this lawsuit pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(a).

**DEFENDANTS**

9.      Defendant North American Automotive Services, Inc., also doing business as Ed Napleton Automotive Group ("Napleton Auto Group"), is an Illinois corporation with its principal place of business at One Oakbrook Terrace, Suite 600, Oakbrook Terrace, IL 60181. North American Automotive Services, Inc. transacts or has transacted business in this District and throughout the United States.

10.      Defendant Ed Napleton Elmhurst Imports, Inc., also doing business as Napleton's Kia of Elmhurst/Ed Napleton Acura ("Napleton's Elmhurst Kia/Acura"), is an Illinois

corporation with its principal place of business at 745 W Lake St, Elmhurst, IL 60126. Ed Napleton Elmhurst Imports, Inc. transacts or has transacted business in this District and throughout the United States.

11.     Defendant Napleton's Arlington Heights Motors, Inc., also doing business as Arlington Heights Chrysler Dodge Jeep Ram ("Napleton's Arlington Heights CDJR"), is an Illinois corporation with its principal place of business at 1155 W Dundee Rd, Arlington Heights, IL 60004.  Napleton's Arlington Heights Motors, Inc. transacts or has transacted business in this District and throughout the United States.

12.     Defendant Napleton's North Palm Auto Park, Inc., also doing business as Napleton's Northlake Chrysler Dodge Jeep Ram ("Napleton's Northlake CDJR"), is a Florida corporation with its principal place of business at 3701 Northlake Blvd, Lake Park, FL 33403.

13.     Defendant Napleton Enterprises, LLC, also doing business as Napleton's South Orlando/Kissimmee Chrysler Dodge Jeep Ram ("Napleton's Kissimmee CJDR"), is a Florida limited liability company with its principal place of business at 1460 E Osceola Pkwy, Kissimmee, FL 34744.

14.     Defendant Clermont Motors, LLC, also doing business as Napleton's Clermont Chrysler Dodge Jeep Ram ("Napleton's Clermont CDJR"), is a Florida limited liability company with its principal place of business at 15859 State Road 50, Clermont, FL 34711.

15.     Defendant North Palm Motors, LLC, also doing business as Napleton's Northlake Kia ("Napleton's Northlake Kia"), is a Florida limited liability company with its principal place of business at 3626 Northlake Blvd, Palm Beach Gardens, FL 33403.

5

16.     Defendant Napleton's Ellwood Motors, Inc., also doing business as Napleton's Ellwood Chrysler Dodge Jeep Ram ("Napleton's Ellwood CJDR"), is a Pennsylvania corporation with its principal place of business at 1000 Lawrence Ave, Ellwood City, PA 16117.

17.     Defendant Napleton's Mid Rivers Imports, Inc., also doing business as Napleton's Mid Rivers Kia ("Napleton's Mid Rivers Kia"), is a Missouri corporation with its principal place of business at 4955 Veterans Memorial Pkwy, St Peters, MO 63376.

18.     Defendant Hitko Kadric ("Kadric") is the General Manager of Napleton's Arlington Heights CDJR and Napleton's Elmhurst Kia/Acura.  At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Kadric resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District.

## COMMON ENTERPRISE

19.     Defendants Napleton Auto Group, Napleton's Elmhurst Kia/Acura, Napleton's Arlington Heights CDJR, Napleton's Northlake CDJR, Napleton's Kissimmee CJDR, Napleton's Clermont CDJR, Napleton's Northlake Kia, Napleton's Ellwood CJDR, and Napleton's Mid Rivers Kia (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below.  Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, and employees. Because these Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

6

**COMMERCE**

20.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

21.     Subsection 1(f) of the Illinois Consumer Fraud Act defines "trade" and "commerce" as follows:

> The terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any service and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State. 815 ILCS 505/1(f).

22.     Defendants Napleton Auto Group, Napleton's Elmhurst Kia/Acura, and Napleton's Arlington Heights CDJR were at all times relevant to the Complaint engaged in trade and commerce in the State of Illinois by advertising, offering for sale, and selling new and used vehicles in and from the State of Illinois.

**DEFENDANTS' BUSINESS ACTIVITIES**

*Background on Unauthorized and Deceptive Add-on Charges*

23.     Defendants frequently lure consumers into their dealerships with low advertised prices.  Consumers who call to confirm advertised prices are told that there will be no fees beyond routine taxes and fees.  Many consumers drive hours to the dealerships based on the advertised prices.

24.     At the dealership, consumers frequently spend time test driving and selecting a vehicle, and then go through the long process of negotiating the price of the vehicle.  After that, for consumers who are financing vehicles, there is often a lengthy discussion of the financing terms.  After an often hours-long process, Defendants present consumers with a stack of

complex, highly technical documents. Defendants then rush consumers through the closing process, which typically requires paperwork that is more than 60 pages deep and over a dozen signatures, simply indicating where to sign.

25. In numerous instances, Defendants have inserted charges for add-on products in these documents without obtaining consumers' express informed consent. These charges commonly amount to hundreds or thousands of dollars and are typically added to the amount financed and spread out over monthly payments, making the added charges more difficult to detect.

26. In other instances, also after consumers have been at a dealership for hours, Defendants falsely tell consumers that add-on products or packages are required to purchase or finance the vehicle, even though they were not included in the low prices advertised or disclosed to consumers who called to confirm prices. If consumers ask to have these extra charges removed, stating that they do not want to purchase add-ons, Defendants falsely tell the consumers that the add-ons are not optional.

27. According to a survey of Napletons' customers, at least 83% of them were charged for add-on products without authorization or as a result of deception.

28. Defendants have charged thousands of consumers hundreds to thousands of dollars each for such unauthorized, unwanted add-ons. In the aggregate, Defendants have charged over $70 million in unauthorized, unwanted add-ons since 2017.

*Defendants Charge Consumers without Their Consent*

29. In numerous instances, Defendants have charged consumers for add-on packages that the consumers never agreed to purchase—and, in some cases, specifically declined—with the unauthorized charges buried in a mountain of paperwork and rolled into the financing of the

8

vehicle. In fact, a Napleton training document lists "[n]on-disclosed packages" among the top four types of complaints that the corporate office receives.

30. For example, one consumer agreed to a total price for a vehicle at the Napleton's Arlington Heights CDJR, prior to the down payment being applied. The consumer later discovered, however, that that the dealership took the consumer's $4,000 down payment and tacked on add-on charges of roughly the same amount without the consumer's consent. Thus, the consumer's down payment only covered the cost of the unauthorized charges, and he still owed the full cost of the vehicle. Many consumers have complained about Defendants charging for multiple add-ons without authorization. For example, one consumer complained that a Defendant dealership added multiple add-on products to the sales contract without authorization. In response, the dealership acknowledged that the consumer had been charged for *seven* add-on products, and refused to refund the consumer for one that it deemed not cancellable, despite the fact that the consumer had never authorized it.

31. In some instances, Defendants have charged consumers for add-ons that they told the consumers were free. For example, one consumer was told that two oil changes, a tire rotation and windshield protection came with the purchase of the vehicle. He lived far from the dealership and was unlikely to have his car serviced there, and would never have paid for windshield protection because it was already covered by his insurance. He also initially declined an extended warranty as far too expensive, but then ultimately agreed when offered a discounted price. He later discovered he had been charged $426 for oil changes, tire rotation and windshield protection, despite Defendants' representations that they were free, and that he was charged the full amount of $3,937 for the extended warranty. He was also charged $289 for window etching without his knowledge or authorization. He tried calling the dealership multiple times to cancel

9

the add-ons and request refunds, but his calls went unreturned. He eventually had to contact the warranty add-on provider directly to request a cancellation of the warranty.

32.     In other instances, Defendants have charged consumers for add-on products that consumers have specifically declined. One consumer said that a Defendant dealership inserted a maintenance package onto his invoice even after he told them that he did not want it. He also said that he did not want VIN etching, but they charged him for it anyway, and insisted that the charge could not be reversed. Another consumer said that he told the sales representative that he did not want GAP insurance, but one of Napleton Auto Group's dealerships added it on his invoice anyway, which he only discovered after he left the dealership.

### Defendants Falsely Claim that Add-ons Are Mandatory

33.     In numerous instances, Defendants tell consumers that the purchase of add-on products is required to purchase or finance a vehicle, purportedly due to dealership or finance company policy. In actuality, add-on products are not required by the Defendants' dealerships or by financing companies. When consumers ask to have charges for add-on products they do not want removed, or to purchase the vehicle at the advertised price without additional charges for add-ons, in numerous instances, they are falsely told that these extra charges are not optional and consumers are therefore unable to purchase vehicles at the advertised prices.

34.     For example, a consumer noted that a Defendant dealership listed a final price on its website for a particular car, and he confirmed this was the price before driving more than three hours to the dealership to see it. When he arrived, he was told that he would need to pay a higher price for the vehicle than the price listed on the website because a Napleton add-on package totaling $2,495 was required. The consumer was not permitted to purchase the vehicle at the advertised price without paying more for the Napleton package.

35.     Another consumer went to look at a vehicle that was advertised online for $27,699, only to be told at the dealership that he would have to pay an additional $1,300 for an add-on package.  In a later call, the dealership again told him that purchasing the add-on package was required, despite the online advertisement that the car was available for $27,699.  After additional interactions, during which the consumer spent additional time trying to get the vehicle for the advertised price, a salesman said that the consumer was still required to take the package. After substantial pushback from the consumer, the salesman eventually agreed to offset the cost of the package in the price of the vehicle, though this "concession" by the sales representative limited the consumer's ability to negotiate the price of the vehicle further, as he otherwise would have done.

36.     In another instance, a consumer noticed during his negotiations with Napleton's Elmhurst Kia/Acura that his purchase price was nearly $1,000 higher than expected.  Only after the consumer pointed out the additional charge did the salesman inform him that he was being charged for an add-on package.  The consumer said that he was not interested in purchasing the add-on package, but the salesman said he could not remove it.  After some debate, the consumer asked if he could at least remove some of the add-ons in the package.  The salesman said he could not, stating that the full package was required.

37.     Similarly, Napleton's Kissimmee CDJR included multiple add-ons, totaling over $700, on a consumer's contract without obtaining the consumer's authorization.  This included a maintenance plan that the consumer did not want, as the dealership was too far away for him to travel for routine maintenance.  When the consumer requested that the add-ons be removed prior to signing, the consumer was told they were required and could not be removed.

38.     In responses to consumer complaints filed with third parties regarding these

11

practices, Defendants have admitted that add-ons are not required by Defendants' dealerships.

39.     In another instance, a salesman at Napleton's Northlake CDJR told a consumer that a particular add-on – specifically, a $900 GAP insurance policy – was required for the financing company to approve his loan.  The consumer later found out from the financing company that the add-on was not required.  Similarly, a consumer was told by a salesman at another of Napleton Auto Group's dealerships that add-ons totaling $3,400 were required by the financing company to get his financing approved, only to be told later by the financing company that this was incorrect.

40.     As a result of such conduct, in many instances, consumers have reported being out hundreds, and often, thousands of dollars for unwanted or unauthorized add-on products.  For example, Defendants' add-on packages range from $1,395 to $2,495 for each vehicle.

41.     Many consumers are unable to obtain refunds or only receive partial refunds, regardless of whether the charges have been authorized.

42.     As the General Manager of the Defendant dealerships in Illinois, Napleton's Elmhurst Kia/Acura and Napleton's Arlington Heights CDJR, Defendant Kadric has received consumer complaints that employees at these dealerships pack in add-on charges without consumers' consent, yet he has failed to correct these issues.  Indeed, the corporate customer retention manager wrote to Kadric that she was beginning to see "a small pattern with customers claiming they're not given proper disclosures for products being added to the deal" at the dealerships managed by Kadric.  Kadric responded in part, "Tough times."

### Corporate Defendants' Discriminatory Practices

43.     Corporate Defendants arrange financing for consumers' purchase of motor vehicles through third-party financing entities.  Each financing entity provides Corporate

Defendants with a specific "buy rate," a risk-based finance charge that reflects the interest rate at which the entity will finance a retail installment contract from the dealer. Corporate Defendants typically obtain and complete consumer applications for credit, obtain consumer credit reports, and verify income to make an initial determination whether a financing applicant will meet the financing entity's underwriting guidelines. Corporate Defendants then submit applications to the financing entity on behalf of consumers.

44.     Corporate Defendants maintain a policy and practice by which they permit sales personnel, at their discretion, to increase the cost of the transaction for consumers. Corporate defendants act on this policy by, among other things, adding a finance charge, or "markup," to the buy rate, and adding charges for items consumers do not want or are not required. Unlike the buy rate, the markup is not based on the underwriting risk or credit characteristics of the consumer submitting the application. Corporate Defendants communicate to consumers only the final total contract rate, which equals the buy rate plus the markup. The financing entity compensates Corporate Defendants from the increased interest revenue derived from the markup. Corporate Defendants' discretionary policy allows sales personnel to arrange consumers' financing with entities that permit higher markups than other entities.

45.     Adding unwanted or unneeded charges increases the total amount the consumer pays in a cash transaction and the total amount a consumer finances in credit transactions.

46.     At least since 2017, Corporate Defendants have charged, on average, Black borrowers more for markups and add-ons than similarly situated non-Latino White consumers.

47.     Indeed, among tens of thousands of consumers who received motor vehicle financing through Corporate Defendants, Corporate Defendants charged Black borrowers, on average, approximately $190 (approximately 18.4 basis percentage points) more in interest.

Corporate Defendants charged Black consumers more often for add-ons, and Black consumers paid approximately $99 more on average for similar add-on packages than non-Latino White borrowers.

48.     Disparities in charges between Black consumers and non-Latino White consumers are statistically significant and cannot be explained by factors related to underwriting risk or credit characteristics of the applicants.

49.     Corporate Defendants' discretionary policy is not justified by a business necessity that could not be met by a less discriminatory alternative.

*Defendant Napleton's Arlington Heights CDJR and Defendant Hitko Kadric's Unlawful Advertising Practices*

50.     During the month of April 2021, Defendant Napleton's Arlington Heights CDJR in the course of its trade or commerce, sent a direct mail advertisement to numerous Illinois residents in the greater Chicago-land area.

51.     The direct mail advertisement offered a detachable card that states: **"Napleton's Arlington Heights Chrysler Dodge Jeep Ram $3,000 Gift Card."**   In addition, the mailer states: **"PS: Please use the attached $3,000 Gift Card as a Discount Voucher towards a brand new FCA Brand Vehicle!"**   A true and correct copy of the advertisement is attached hereto as Exhibit A.

52.     Defendant Kadric, as General Manager of Napleton's Arlington Heights CDJR, reviewed and approved of the advertisement above.

53.     Section 475.590 of the Illinois Motor Vehicle Advertising Regulations prohibits dealers from offering a free gift in connection with the purchase or lease of a vehicle where the price is arrived at through bargaining or negotiation. 14 Ill. Adm. Code 475.590. In addition, the

14

Consumer Fraud Act, Section 2 (j) (1) prohibits dealers from using coupons in connection with the retail sale of motor vehicles.

54.     Section 2J.1 of the Consumer Fraud Act states that "no coupon shall be offered in connection with any retail sale of a motor vehicle." 815 ILCS 505/2J.1.

55.     The mailer, by operating as an offer to receive an invitation-only price and by including a voucher to present to the dealership in order to obtain that price, operates as a coupon in connection with the retail sale of a vehicle.

56.     The mailer further states: **"$90 DOWN"** without clearly and conspicuously disclosing the required credit sales advertising disclosures anywhere on the mailer.

57.     Section 475.610 of the Illinois Motor Vehicle Advertising Regulations prohibits dealers from advertising "closed-end credit" terms in an advertisement, offer of sale, or sale of any motor vehicle if the advertisement contains a "triggering term" such as the amount of down payment. 14 Ill. Adm. Code 475.610.

58.     In the event the dealer uses a "triggering term," it must clearly and conspicuously disclose a) the amount or percentage of any down payment, terms of repayment, and "annual percentage rate" using that term spelled out in full or the abbreviation "APR",  b) the contractual amount owing at the conclusion of a pre-determined schedule of installment payments, in close proximity to and, where applicable, in the same decibel tone as, the "triggering term" when a dealer advertises the availability of balloon-note financing and c) a manufacturer's or manufacturer captive finance company's tiered financing offer.  14 Ill. Adm. Code 475.610.

59.     Thus, by stating "90 DOWN" in the mailer, Defendants Napleton's Arlington Heights CDJR and Kadric were required to make certain disclosures, which they did not.

15

60.     The advertisement's reference to the downpayment amount is also a "triggering term" under the TILA, but the advertisement does not disclose the terms of repayment or an annual percentage rate ("APR"), as required by the TILA when a triggering term is used.  15 U.S.C. § 1664.

61.     Finally, the mailer states **"RECEIVE UP TO: 30% OFF MSRP"** without clearly and conspicuously disclosing the lowest discount or highest price in the range in the advertisement.

62.     Section 475.390 of the Illinois Motor Vehicle Advertising Regulations requires the highest price or lowest discount in the range be clearly and conspicuously disclosed in the advertisement when vehicles are being offered for sale at a range of prices or at a range of percentage or fractional discounts, through the use of the terms "As Low As" or "From," or terms of similar import. 14 Ill. Adm. Code 475.390(a).

63.     By stating "RECEIVE UP TO: 30% OFF MSRP" Defendants Napleton's Arlington Heights CDJR and Kadric were required to disclose the lowest discount, which they did not.

64.     Defendant Kadric is the General Manager of Napleton's Arlington Heights CDJR and his name appears on the advertisement.

65.     Defendant Napleton's Arlington Heights CDJR's unfair and deceptive advertising and transactional practices harm both consumers and other dealerships in the State of Illinois.

*       *       *

66.     Based on the facts and violations of law alleged in this Complaint, Plaintiffs have reason to believe that Defendants are violating or are about to violate laws enforced by the Commission and the People of the State of Illinois.

16

## VIOLATIONS OF THE FTC ACT

67.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

68.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

69.     Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## Count I (by Plaintiff FTC)
### Misrepresentations Relating to Add-On Products

70.     In numerous instances, in connection with the offering for sale, lease, or financing, or sale, lease or financing of vehicles, Defendants represent, directly or indirectly, expressly or by implication, that in order to purchase, lease, or finance vehicles, consumers are required to purchase add-on products.

71.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 70, consumers are not required to purchase add-on products.

72.     Therefore, Defendants' representations as set forth in Paragraph 70 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

17

<u>**Count II (by Plaintiff FTC)**</u>

**Misrepresentations Regarding Charges**

73.     In numerous instances, in connection with the offering for sale, lease, or financing, or sale, lease or financing of vehicles, Defendants represent, directly or indirectly, expressly or by implication, that charges appearing on consumers' sales contracts are authorized by consumers.

74.     In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 73, the charges appearing on consumers' sales contracts include charges not authorized by consumers.

75.     Therefore, Defendants' representations as set forth in Paragraph 73 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

<u>**Count III (by Plaintiff FTC)**</u>

**Unfair Practices Relating to Add-On Charges**

76.     In numerous instances, Defendants charge consumers for add-on products without obtaining consumers' express, informed consent.

77.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

78.     Therefore, Defendants' acts or practices as set forth in Paragraph 76 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF THE TRUTH IN LENDING ACT AND REGULATION Z

79.     Under Section 144 of the TILA, 15 U.S.C. § 1664, and Section 226.24(d) of Regulation Z, 12 C.F.R. § 226.24(d), as amended, advertisements promoting closed-end credit in consumer credit transactions are required to make certain disclosures ("TILA additional terms") if they state any of several terms, including the amount or percentage of any downpayment ("TILA triggering terms").

80.     Under Section 144 of the TILA, 15 U.S.C. § 1664, and Section 226.24(c) of Regulation Z, 12 C.F.R. § 226.24(c), as amended, advertisements promoting closed-end credit in consumer credit transactions are required to state the terms of repayment and an "annual percentage rate," using that term, if they state the "amount or percentage of any downpayment."

81.     Defendants Napleton's Arlington Heights CDJR's and Kadric's advertisement promotes closed-end credit, and these Defendants are subject to the requirements of the TILA and Regulation Z.

82.     Pursuant to Section 108(c) of TILA, 15 U.S.C. § 1607(c), every violation of TILA and Regulation Z constitutes a violation of the FTC Act.

## Count IV (by Plaintiff FTC)
**Failure to Disclose or Disclose Clearly and Conspicuously Required Credit Information by Defendants Napleton's Arlington Heights CDJR and Kadric**

83.     Defendants' Napleton's Arlington Heights CDJR's and Kadric's advertisement promoting closed-end credit fails to disclose, or fails to disclose clearly and conspicuously, TILA additional terms required by the TILA and Regulation Z, including one or more of the following:

(a)     The terms of repayment, which reflect the repayment obligations over the full term of the loan, including any balloon payment; and

19

(b)     The "annual percentage rate," using that term, and, if the rate may be

increased after consummation, that fact.

84.     Therefore, the practices as set forth in Paragraph 83 violate Section 144 of the

TILA, 15 U.S.C. § 1664, and Section 226.24(d) of Regulation Z, 12 C.F.R. § 226.24(d), as

amended.

## VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT AND REGULATION B

85.     Section 701(a)(1) of the ECOA, 15 U.S.C. § 1691(a)(1), and Section 202.4(a) of

Regulation B, 12 C.F.R. § 202.4(a), prohibit a creditor from discriminating against an applicant

with respect to any aspect of a credit transaction on the basis of race, color, religion, national

origin, sex, marital status, or age (provided the applicant has the capacity to contract); because all

or part of the applicant's income derives from any public assistance program; or because the

applicant has in good faith exercised any right under the Consumer Credit Protection Act, 15

U.S.C. Ch. 41.

86.     Corporate Defendants are creditors as defined in Section 702(e) of the ECOA, 15

U.S.C. § 1691a(e), and Section 202.2(l) of Regulation B, 12 C.F.R. § 202.2(l).

87.     Section 704(c) of the ECOA, 15 U.S.C. § 1691c(c), specifically empowers the

Commission to enforce the ECOA.  Corporate Defendants' violations of the ECOA are deemed

to be violations of the FTC Act and are enforceable as such by the Commission under that Act.

Further, the Commission is authorized to use all of its functions and powers under the FTC Act

to enforce compliance with the ECOA by any person, irrespective of whether that person is

engaged in commerce or meets any other jurisdictional tests set by the FTC Act.  This includes

the power to enforce a Consumer Financial Protection Bureau regulation promulgated under the

ECOA, such as Regulation B, in the same manner as if a violation of that regulation had been a

20

violation of an FTC trade regulation rule.

## Count V (by Plaintiff FTC against Corporate Defendants)
### Discriminatory Financing Practices

88.     In connection with motor vehicle credit transactions, on the basis of race, color, or national origin, Defendants impose higher costs on Black applicants on average than similarly situated non-Latino White applicants.

89.     Defendants' acts, policies, and practices as set forth in Paragraph 88 constitute discrimination against applicants with respect to any aspect of a credit transaction on the basis of race, color, or national origin in violation of Section 701(a)(1) of the ECOA, 15 U.S.C. § 1691(a)(1), and Section 202.4(a) of Regulation B, 12 C.F.R. § 202.4(a).

## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

90.     Section 2 of the Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

91.     Section 2 of the Uniform Deceptive Trade Practices Act provides in relevant part as follows:

> § 2. Deceptive trade practices.

21

(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

815 ILCS 510/2.

92.     Section 7 of the Consumer Fraud Act provides:

(a) Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by the Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by preliminary or permanent injunction the use of such method, act or practice. The Court, in its discretion, may exercise all powers necessary, including by not limited to: injunction, revocation, forfeiture or suspension of any license, charter, franchise, certificate or other evidence of authority of any person to do business in this State; appointment of a receiver, dissolution of domestic corporations or association suspension or termination of the right of foreign corporation or associations to do business in this State; and restitution.

(b) In addition to the remedies provided herein, the Attorney General may request and this Court may impose a civil penalty in a sum not to exceed $50,000 against any person found by the Court to have engaged in any method, act or practice declared unlawful under this Act. In the event the court finds the method, act or practice to have been entered into with the intent to defraud, the court has the authority to impose a civil penalty in a sum not to exceed $50,000 per violation.

(c) In addition to any other civil penalty provided in this Section, if a person is found by the court to have engaged in any method, act, or practice declared unlawful under this Act, and the violation was committed against a person 65 years of age or older, the court may impose an additional civil penalty not to exceed $10,000 for each violation.

815 ILCS 505/7.

93.     Section 10 of the Consumer Fraud Act provides, "In any action brought under the provisions of this Act, the Attorney General is entitled to recover costs for the use of this State."  815 ILCS 505/10.

## Count VI (by Plaintiff State of Illinois)
### Misrepresentations Relating to Add-On Products made by Defendants located in Illinois

94.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or financing, or sale and financing of vehicles, and while engaged in a course of trade or commerce, Defendants Hitko Kadric, Napleton Auto Group, Napleton's Elmhurst Kia/Acura, and Napleton's Arlington Heights CDJR represent, directly or indirectly, expressly or by implication, that in order to purchase vehicles, consumers are required to purchase add-on products with the intent that the consumer rely on the information.

95.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 94, consumers are not required to purchase add-on products.

96.     Therefore, Defendants' representations as set forth in Paragraph 94 are false or misleading and constitute deceptive acts or practices in violation of Section 2 of the Consumer Fraud Act.

97.     Further, Defendants' representations as set forth in Paragraph 94 cause a likelihood of confusion as to whether add-on products are a purchase requirement in violation of Section 2 of the Uniform Deceptive Trade Practices Act.

<u>**Count VII (by Plaintiff State of Illinois)**</u>

**Misrepresentations Regarding Charges made by Defendants located in Illinois**

98.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or financing, or sale and financing of vehicles, and while engaged in a course of trade or commerce, Defendants Hitko Kadric, Napleton Auto Group, Napleton's Elmhurst Kia/Acura, and Napleton's Arlington Heights CDJR represent, directly or indirectly, expressly or by implication, that charges appearing on consumers' sales contracts are authorized by consumers.

99.     In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 98, the charges appearing on consumers' sales contracts include charges not authorized by consumers.

100.     Therefore, Defendants' representations as set forth in Paragraph 98 are false or misleading and constitute deceptive acts or practices in violation of Section 2 of the Consumer Fraud Act.

101.     Further, Defendants' representations as set forth in Paragraph 98 cause a likelihood of confusion as to whether consumers agreed or were required to agree to all charges the Defendants placed in their contracts in violation of Section 2 of the Uniform Deceptive Trade Practices Act.

<u>**Count VIII (by Plaintiff State of Illinois)**</u>

**Unfair and Deceptive Practices Relating to Add-On Charges made by Defendants located in Illinois**

102.     In numerous instances, and while engaged in a course of trade or commerce, Defendants Hitko Kadric, Napleton Auto Group, Napleton's Elmhurst Kia/Acura, and

Napleton's Arlington Heights CDJR charge consumers for add-on products without obtaining consumers' express, informed consent.

103.    Defendants' actions cause or are likely to cause substantial injury to consumers that consumers.

104.    Therefore, Defendants' acts or practices as set forth in Paragraph 102 constitute unfair acts and deceptive practices in violation of Section 2 of the Consumer Fraud Act.

## Count IX (by Plaintiff State of Illinois)

### Violation of Section 2J.1 of the Consumer Fraud Act by Defendants Napleton's Arlington Heights CDJR and Hitko Kadric

105.    Section 2J.1 of the Consumer Fraud Act provides:

> Any retail seller, or motor vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code, who publishes or issues coupons for use by consumers in the purchase of specific items of merchandise in the retail outlet of the seller, or established place of business, and represents that presentation of a coupon permits the purchase of a specific item of merchandise for less than the regular price shall clearly state (a) the discount or (b) the fact that the coupon featured price is a "sale" price to which the presenter is entitled. No coupon shall be offered in connection with any retail sale of a motor vehicle.

> 815 ILCS 505/2J.1

106.    While engaged in a course of trade or commerce Defendant Napleton's Arlington Heights CDJR and Hitko Kadric violated Section 2J.1 of the Consumer Fraud Act, 815 ILCS 505/2J.1, by offering a coupon in connection with the retail sale of a motor vehicle.

## Count X (by Plaintiff State of Illinois)

### Violation of Illinois Motor Vehicle Advertising Law by Defendants Napleton's Arlington Heights CDJR and Hitko Kadric

25

107.    Pursuant to Section 4 of the Consumer Fraud Act, the Illinois Attorney General promulgated the Illinois Administrative Rules on Motor Vehicle Advertising, 14 Ill. Adm. Code Section 475, which have the force of law.

108.    Defendant Napleton's Arlington Heights CDJR violated the Illinois Motor Vehicle Advertising Regulations, 14 Ill. Adm. Code 475.110, *et seq.*, thereby committing deceptive and unfair acts and practices declared unlawful under Section 2 of the Consumer Fraud Act, 815 ILCS 404/2 by:

        a)    Advertising or offering a free gift in connection with the purchase or lease of a vehicle where the vehicle is sold or leased at a price arrived at through bargaining or negotiation in violation of Section 475.590;

        b)    Advertising or offering "closed-end credit" terms without clearly and conspicuously disclosing the required credit sales advertising disclosures in violation of Section 475.610; and

        c)    Advertising vehicles offered for sale at a range of percentage discounts, without clearly and conspicuously disclosing the highest price or lowest discount in the range in the advertisement in violation of Section 475.390.

## CONSUMER INJURY

109.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TILA, the ECOA, and the Illinois Consumer Fraud Act.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

A.    Enter a permanent injunction to prevent future violations of the FTC Act, the

TILA, the ECOA, and the Illinois Consumer Fraud Act by Defendants;

B.    Award monetary and other relief within the Court's power to grant;

C.    Award civil penalties, including:

    1.    Ordering the Defendant to pay up to $50,000 per deceptive or unfair act or

        practice and an additional amount of $50,000 for each act or practice

        found to have been committed with intent to defraud, as provided in

        Section 7 of the Consumer Fraud Act, 815 ILCS 505/7;

    2.    An additional civil penalty in the amount of $10,000 per deceptive act or

        practice found by the Court to have been committed by Defendants against

        a person 65 years of age and older as provided in Section 7 of the

        Consumer Fraud Act, 815 ILCS 505/7;

D.    Award the costs of bringing this action, including all costs incurred by the Illinois

Attorney General for the investigation and prosecution of this action, as provided by Section 10

of the Consumer Fraud Act, 815 ILCS 505/10; and

E.    Award any additional relief as the Court determines to be just and proper.


                          Respectfully submitted,

                          REILLY DOLAN
                          Acting General Counsel


Dated:  March 31, 2022          /s/Helen Clark
                          HELEN CLARK
                          Federal Trade Commission
                          600 Pennsylvania Ave., NW
                          Mail Stop CC-10232
                          Washington, DC 20580

hclark@ftc.gov
(202) 326-2273

WILLIAM J. HODOR, Local Counsel
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Room 3030
Chicago, IL 60604
whodor@ftc.gov
(312) 960-5634

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


**KWAME RAOUL**
Illinois Attorney General


Dated:  March 31, 2022        /s/Jacob Gilbert
CASSANDRA HALM
JACOB GILBERT
GREG GRZESKIEWICZ, Bureau Chief
Consumer Fraud Bureau
100 W. Randolph, 12th Fl.
Chicago, IL 60601
Cassandra.Halm@ilag.gov
Jacob.Gilbert@ilag.gov
Greg.Grzeskiewicz@ilag.gov
(217)725-9591 (Halm)
(773) 590-6926 (Gilbert)

Attorneys for Plaintiff
THE PEOPLE OF THE STATE OF
ILLINOIS

Exhibit A

